## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

CYNTHIA JACKSON,                                    Case No. 1:14-cv-873

        Plaintiff,                                   Dlott, J.
                                                    Bowman, M.J.

   v.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

## REPORT AND RECOMMENDATION

Plaintiff Cynthia Jackson filed this Social Security appeal in order to challenge the Defendant's findings that she is not disabled.  *See* 42 U.S.C. §405(g).  Proceeding through counsel, Plaintiff presents three claims of error, all of which the Defendant disputes.  As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

### I.  Summary of Administrative Record

On April 27, 2011, Plaintiff protectively filed an application for Disability Insurance Benefits ("DIB"), alleging disability as of April 19, 2011.  (Tr. 230-72).  Plaintiff's applications were denied initially and upon reconsideration. She then requested a hearing. (Tr. 104-229). Plaintiff appeared for a hearing before an administrative Law Judge ("ALJ") on January 24, 2013, at which time Plaintiff was unrepresented. (Tr. 96-103). The ALJ continued the hearing to allow Plaintiff time to obtain additional information. (*Id.*). The ALJ held a second hearing on May 9, 2013. Plaintiff, who was

1

now represented by counsel, a witness, and a vocational expert ("VE") testified. (Tr. 62-95). On May 31, 2013, the ALJ issued an unfavorable decision. (Tr. 45-61). On June 12, 2013, after reviewing post-hearing evidence, the ALJ issued an amended decision, concluding that Plaintiff was not disabled from her alleged onset date through the date of the decision. (Tr. 706-19.)  Plaintiff now seeks judicial review of that decision.

The record on which the ALJ's decision was based reflects that Plaintiff was 30 years old on the alleged onset date. She is a high school graduate.  She has worked part-time as a banquet server, however her annual earnings have been below the substantial gainful activity level.  As such, so has no past relevant work pursuant to Agency regulations.  Plaintiff was hospitalized in April 2011 for injuries sustained in a motor vehicle accident.  Her injuries included a left clavicle fracture, a right mid-shaft femur fracture, a left talus dislocation, right anterior third through sixth rib fractures and non-displaced sternal fracture, and pulmonary embolism.  Plaintiff alleges disability based primarily upon these injuries.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "status-post motor vehicle accident with a history of trauma and multiple fractures, a generalized anxiety disorder, a post-traumatic stress disorder, an obsessive compulsive disorder, and a personality disorder." (Tr. 714).  The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1.   The ALJ determined that Plaintiff retains the following residual functional capacity ("RFC") to perform sedentary work with the following nonextertional limitations:

2

> She cannot work in an environment in which there would be fast paced requirements, she can do no work around heights, hazards or dangerous machinery, she can do no close team work, she can have no more than intermittent superficial contact with the public, she can have no more than occasional contact with coworkers and supervisors, and she can do no operation of motor vehicles.

(Tr. 715). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff can perform jobs that exist in significant numbers in the national economy, including such jobs as general office clerk/document preparer, order clerk, and credit authorization clerk. (Tr. 719). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB. *Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff first argues that the ALJ erred by: 1) failing to give controlling weight to the opinions of Plaintiff's treating physicians; 2) improperly evaluating Plaintiff's credibility; and 3) improperly formulating the hypothetical questions posed to the vocational expert. Upon close analysis, I conclude that none of the asserted errors requires reversal or remand.[1]

---

[1] Additionally, Plaintiff suggests that the ALJ erred by not obtaining a medical expert opinion or additional consultative evaluations (Doc. 11 at 10). Plaintiff also asks this Court to remand this case pursuant to sentence six of 42 U.S.C. 405(g) for an award of benefits for a closed period from April 11, 2011 until March 8, 2013, the date of Dr. Jesse's evaluation. To the extent that such assertions could be construed as additional errors, they are not well-taken. Plaintiff does not provide any evidence or argument in support of such arguments and therefore fails to develop these arguments in any meaningful way. It is not the Court's function to comb through the entire record to develop an argument on Plaintiff's behalf or to take the portions of the record cited by Plaintiff's counsel and attempt to craft an argument that supports the general issues he referenced in the most perfunctory manner. *Gray v. Astrue,* 4:09–CV–01468, 2010 WL 2106200 (N.D.Ohio Mar.31, 2010) report and recommendation adopted sub nom. *Gray v. Comm'r of Soc. Sec.,* 4:09CV1468, 2010 WL 2106196 (N.D.Ohio May 25, 2010) (citing *McPherson v. Kelsey,* 125 F.3d 989, 995–96 (6th Cir.1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone

bones."). *See also Hollon v. Comm'r of Soc. Sec.,* 447 F.3d 477, 490 (6th Cir.2006) ("This challenge warrants little discussion, as [plaintiff] has made little effort to develop this argument in her brief on appeal....").

4

of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  *See Combs v.  Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits.  20 C.F.R. § 404.1512(a).  A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy.  42 U.S.C. § 423(d)(1)(A).

**B. Specific Errors**

1. *Weight assigned to the treating physician*

Plaintiff's first assignment of error alleges that the ALJ erred in failing to accept the physical functional limitations found by her treating physician, Sabir Quraishi, M.D. Plaintiff further contends that the ALJ erred by mischaracterizing the opinion of Peace Jesse, D.O. as one of a "treating physician." Plaintiff's contentions are not well-taken.

In evaluating the opinion evidence the ALJ must consider the factors set forth in 20 C.F.R. § 404.1527(d)(2). These factors include: "(1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion, with respect to relevant evidence such as medical signs and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician rendering the opinion; and (6) any other factor raised by the applicant." *Meece v. Barnhart,* 192 Fed. Appx. 456, 461 (6th Cir.2006) (citing 20 C.F.R. §§ 404.1527(d)(2)-(d)(6)).

It is well established that the "[t]he ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.' " *Blakley v. Commissioner Of Social Sec.,* 581 F.3d 399, 406 (6th Cir.2009) (quoting *Wilson v. Commissioner,* 378 F.3d 541, 544 (6th Cir.2004). A finding by the ALJ that a treating physician's opinion is not consistent with the other substantial evidence in the case record "means only that the opinion is not entitled to 'controlling weight,' *not that the opinion should be rejected."* Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *4 (emphasis added). "Treating source

medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley,* 581 F.3d at 408. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. § 404.1527(d)(2)(i)(ii); 416 .927(d)(2)(i)(ii); *Wilson,* 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d) (3)-(6), 416.927(d)(3)-(6); *Wilson v. Commissioner,* 378 F.3d 541, 544 (6th Cir.2004).

Thus, the treating physician rule "requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians." *See Blakley v. Com'f Social Security,* 581 F.3d 399, 406 (6th Cir.2009).

*1. Dr. Jesse*

Here, in formulating Plaintiff's RFC for sedentary work as outlined above, the ALJ gave significant weight to the findings of Dr. Jesse.  Dr. Jesse performed a consultative evaluation. (Tr. 675-79). On physical examination, Dr. Jesse reported normal findings except for a mild limp, left foot sensation, and cervical tenderness. (Tr. 676). Range of motion and strength testing revealed some limited range of motion and slight decreased strength of the right hip and left ankle. (Tr. 676-78). Dr. Jesse opined that Plaintiff could stand/walk 4 hours in an 8-hour workday, one to two hours without interruption; had no limitations in sitting could lift 6 to 10 pounds frequently, and 11 to 20 pounds occasionally. (Tr. 678). Dr. Jesse also opined that Plaintiff was moderately limited in repetitive foot movements and not significantly limited in pushing/pulling. (Tr. 678).

The ALJ found Dr. Jesse's assessment to be consistent with Plaintiff's testimony that she exercises every other day, frequently walks, does the dishes, cooks supper, and does the laundry.   The ALJ considered Plaintiff's testimony that she was working part-time as a banquet server. (Tr. 68, 80-81, 716). Plaintiff stated that she went back to work part-time on July 30, 2011 or the first week of August 2011 with initial restrictions of 4 hours a day and no lifting over 5 to 10 pounds. (Tr. 73-74). Her current restrictions are no more than 6 hours a day, Monday through Friday, with lifting no more than 5 to 10 pounds (Tr. 74-75). Plaintiff described her job responsibilities as cleaning and setting tables, setting up the buffet line with plates, chafers, and sternos, and "run[ning] and be[ing] on [her] feet, like jump[ing] up" to meet the customer needs for weddings and other parties. (Tr. 80-81). The ALJ observed that this work was a "fairly exertional job." (Tr. 717).

Plaintiff argues that the ALJ incorrectly found that Dr. Jesse was a treating medical source and therefore, gave his opinion more weight than it deserved.  While the ALJ did erroneously identify Dr. Jesse as a treating physician in the narrative of his decision, the Commissioner contends that the error was not harmful to his evaluation of the evidence and would not have resulted in a different decision.  Namely, the ALJ's evaluation of Dr. Jesse's opinion would still be reasonable under the standard for reviewing non-treating medical sources. (Tr. 675-79, 714, 717). The undersigned agrees.

Considering Plaintiff's allegations, testimony, activities, the record evidence as a whole, and giving Plaintiff "credit for any residuals secondary to her multiple injuries," and "every benefit of the doubt," the ALJ reasonably concluded that Dr. Jesse's opinion

was most consistent with the record, including Plaintiff's testimony, and therefore should be given significant weight. (Tr. 717). *See* 20 C.F.R. § 404.1527(c)(4) (generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion). While Plaintiff asserts that this evidence should have been weighed differently, it was the ALJ's duty to resolve the conflicting evidence, and a court may not reweigh the evidence. As more fully explained below, the ALJ evaluated every medical opinion he received regardless of its source and determined what weight it deserved. *See* 20 C.F.R. § 404.1527(c)(1).

### 2. Dr. Quraishi

The ALJ's RFC assessment also considered the findings of Dr. Quraishi, Plaintiff's treading physician. On February 14, 2013, Dr. Quraishi completed a physical medical source statement wherein he opined that Plaintiff was limited to less than the full range of sedentary work and could stand/walk for no longer than a total of three hours in an eight hour day, and sit for no longer than a total of two hours in an eight-hour day. (Tr. 662-63, 713). Dr. Quraishi also opined that Plaintiff could lift and carry 5 pounds occasionally and 2.5 to 5 pounds frequently. (Tr. 662). The ALJ, however, placed little weight on Dr. Quraishi's assessment that Plaintiff was unable to perform sedentary work. Plaintiff argues that the ALJ's decision is not substantially supported in this regard.

In discounting Dr. Quraishi's opinion, the ALJ determined that his opinion was not well supported objectively and was inconsistent with other substantial evidence. Simply put, the ALJ stated that the "record simply does not support Dr. Quraishi's assessment…". (Tr. 717). Again, the undersigned agrees.

9

The ALJ noted that Dr. Quraishi's opinion was also not well-supported by his own notes or other record evidence. (Tr. 716-17). The record indicates that Dr. Quraishi and his staff first saw the claimant one month after the motor vehicle accident and thereafter through December 2012. (Tr 625-637). However, by July 29, 2011, Plaintiff was "doing great," had no restrictions, was to "return to work progressively." (Tr. 554, 712). During a September 2011 check-up, Dr. Quraishi reported that Plaintiff had no new complaints, was doing fair, and had returned to work. (Tr. 593). In January 2012, Dr. Quraishi noted that Plaintiff was doing fair, she had no leg swelling but some left ankle tenderness and was continuing to work with restrictions. (Tr. 658). In March 2012, Plaintiff had a healed left clavicular fracture and Dr. Quraishi recommended an exercise regimen and to continue to work with restrictions. (Tr. 654-56). In October 2012, Dr. Quraishi reported that Plaintiff was doing well and had no specific complaints except left ankle pain with limited range of motion. (Tr. 648-49, 713). In December 2012, Dr. Quraishi also reported that Plaintiff was anxious when in a crowd, had left ankle tenderness and limited range of motion with some edema, but otherwise was doing fair. (Tr. 646, 713).

Dr. Qurashi's assessment was also inconsistent with Plaintiff's testimony. As previously stated, Plaintiff's testified that she was working part-time as a banquet server. (Tr. 68, 80-81, 716). Plaintiff further stated that she went back to work part-time on July 30, 2011 or the first week of August 2011 with initial restrictions of 4 hours a day and no lifting over 5 to 10 pounds. (Tr. 73-74). Her current restrictions are no more than 6 hours a day, Monday through Friday, with lifting no more than 5 to 10 pounds. (Tr. 74-75). Plaintiff described her job responsibilities as cleaning and setting tables, setting up the buffet line with plates, chafers, and sternos, and "run[ning] and be[ing] on [her] feet,

10

like jump[ing] up" to meet the customer needs for weddings and other parties. (Tr. 80-81). The ALJ observed that this work was a "fairly exertional job." (Tr. 717).  Moreover, as noted by the Commissioner, by her own description, Plaintiff was working longer hours (6 hours vs. 5 hours) and lifting more (5 to 10 pounds vs. 2.5 to 5 pounds) than Dr. Quraishi opined. (Compare Tr. 74- 75, 81 to Tr. 662-63). In addition to working 6 hours a day as a server, Plaintiff also exercised every other day, walked, washed dishes, cooked, did laundry, socialized, attended church, and drove. (Tr. 68, 74-75, 81-85, 670-71, 717).

It is well settled that an ALJ may properly discount a treating physician's opinion based on a claimant's subjective complaints and if unsupported by objective findings. *See Warner v. Commissioner of Soc. Sec.*, 375 F.3d 387, 391 (6th Cir. 2004) ("Dr. Sonke's conclusion regarding the amount of weight that Warner could lift regularly appears to be based not upon his own medical conclusion, but upon . . . Warner's own assessment of his weight-lifting limitations."); *McCoy ex rel. McCoy v. Cater*, 81 F.3d 44, 47 (6th Cir. 1995) (ALJ reasonably discounted treating physician's opinion where claimant's subjective complaints were unsupported by objective findings).[2]   For these reasons, the undersigned finds that the ALJ properly discounted Dr. Quraishi's opinion because it was not well-supported and was inconsistent with the record as a whole.

---

[2]     Additionally, there were several medical source opinions which were inconsistent with Dr. Quraishi's opinion.  Namely, on July 6, 2011, state agency physician Dr. Klyop opined that Plaintiff could perform light work activity and on October 28, 2011, state agency physician Dr. Hall did not assess any limitations noting that Plaintiff's "[i]mpairment did not last 12 months" and she had "returned to work." (Tr. 110-12, 119-20, 127).

3. *ALJ's credibility finding*

Plaintiff's statement of errors also challenges the sufficiency of ALJ's decision concerning her credibility, arguing that he should have found her entirely credible and that he did not support her limited number of reasons with substantial evidence. For the reasons stated below, the undersigned finds that the ALJ's credibility determination is supported by substantial evidence.

The regulations provide that the RFC is the most a claimant can still do despite his or her physical and mental limitations. See 20 C.F.R. § 404.1545(a). At the hearing level, the ALJ has the responsibility of assessing a claimant's RFC. See 20 C.F.R. § 404.1546(c). The ALJ assesses the claimant's RFC assessment by evaluating all the relevant evidence, including the medical evidence and the claimant's statements concerning his or her abilities and limitations. See 20 C.F.R. § 404.1545(a)(3). It is the ALJ's obligation to assess the claimant's RFC based upon the record in its entirety, and it is the ALJ's duty as the factfinder to resolve conflicts in the evidence. *See* SSR 96–5p, 1996 WL 374183, at *5 (1996); 20 C.F.R. §§ 404.1546, 404.1527(c).

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers v. Comm'r of Social Sec.,* 486 F.3d 234, 247 (6th Cir.2007) (citations omitted). In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir.2001). In evaluating complaints of disabling pain, the fact-finder will first examine "whether there is objective medical evidence" that "confirms the severity of the alleged pain" or "can reasonably be expected to produce the alleged disabling pain."

12

*Walters v. Comm'r of Social Sec.,* 127 F.3d 525, 531 (6th Cir.1997). "[I]f disabling severity cannot be shown by objective medical evidence alone, the Commissioner will also consider other factors, such as daily activities and the type and dosage of medication taken." *Id.* (citing 20 C.F.R. § 404.1529(c)(3)).

The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec. of HHS,* 753 F.2d 517, 519 (6th Cir.1985). In this regard, Social Security Ruling 96–7p explains:

> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

*4 SSR 96–7p.

In addition, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* The ALJ's credibility decision must also include consideration of the following factors: 1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the

individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. See 20 C.F.R. §§ 404.1529(c) and 416.929(c); SSR 96–7p.

While an ALJ may properly consider a Plaintiff's inconsistent statements and other inconsistencies in the record, the ALJ must also consider other factors listed in SSR 96–7p, and may not selectively reference a portion of the record which casts Plaintiff in a capable light to the exclusion of those portions of the record which do not. *See Howard v. Comm'r of Soc. Sec.,* 276 F.3d 235, 240–41 (6th Cir.2002). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter,* 307 F.3d 377, 379 (6th Cir.2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, his testimony, and other evidence. *Warner v. Comm'r of Soc. Sec.,* 375 F.3d at 392.

Here, based upon the injuries she sustained from the motor vehicle incident, Plaintiff claims that she suffers from pain that would prevent her from working 40 hours a week. Plaintiff asserts that Dr. Carver's consultative psychological evaluation "corroborate her subjective claims of pain" and was consistent with Dr. Quraishi's opinion that she could not work 40 hours per week. Contrary to Plaintiff's assertion, the ALJ reasonably determined that such findings do not support Plaintiff's complaints of disabling pain.

14

At the outset, as detailed above, the ALJ properly discounted Dr. Quaraishi's assessment that Plaintiff could perform less than sedentary work. As such, his assessment does not support Plaintiff's subjective complaints of disabling pain.

With respect to Dr. Carver, as noted by the Commissioner, although he made observations about Plaintiff's pain behavior (Tr. 672), he provided a *psychologica*l assessment. (Tr. 665-74) (emphasis added). *See* 20 C.F.R. § 404.1527(c)(5) (less weight given to an opinion of a specialist about medical issues not related to his area of specialty). Dr. Carver opined that Plaintiff had several marked limitations in some areas and concluded that she was "unemployable" and not capable of full-time employment. (Tr. 666, 674).

However, Dr. Carver also opined that Plaintiff was not significantly limited in her ability to remember and understand short and simple or detailed instructions. (Tr. 666). Dr. Carver also assessed Plaintiff's Global Assessment of Functioning (GAF) score at 55. (Tr. 674). A GAF score of 55 indicates "moderate" symptoms or moderate difficulty in social and occupational functioning.  DSM-IV-Tr. at 34. On examination, Dr. Carver noted that Plaintiff had excellent self-care skills, was polite and cooperative, described her interaction as "delightful," she was also "chatty and talkative." (Tr. 671). Plaintiff had clear and understandable speech, appropriate affect, anxious mood, and intact judgment. (Tr. 672-73). Dr. Carver also reported that Plaintiff's daily activities included driving, household chores, attending church, socializing, hobbies, and working. (Tr. 670-71, 674, 717).  In light of the foregoing, the ALJ reasonably determined that that Dr. Carver's opinion of disability lacked support and was inconsistent with his evaluation findings and the record as a whole. (Tr. 717).

15

More specifically, the undersigned found that Plaintiff's own accounting of her daily activities as reported to Dr. Carver are inconsistent with marked limitations and are clearly not reflective of a disabled individual. In this regard the ALJ noted that Plaintiff frequently drives, does laundry, cooks and cleans, goes to church, participates in social activities with her fiancé, interacts on Facebook, talks on the phone with friends and enjoys painting. Such a determination comports with agency regulations and therefore, was an appropriate factor to consider in assessing Plaintiff's credibility. See 20 C.F.R. § 416.929(c)(3)(i) (daily activities considered); *Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 392 (6th Cir.2004) ("The administrative law judge justifiably considered Warner's ability to conduct daily life activities in the face of his claim of disabling pain."); *Blacha v. Sec'y of Health & Human Servs.,* 927 F.2d 228, 231 (6th Cir.1990) ("As a matter of law, an ALJ may consider household and social activities in evaluating complaints of disabling pain.")

The ALJ's credibility finding also considered the testimony of Plaintiff's grandmother at the administrative hearing, as well as her post hearing witness statement, wherein she stated that Plaintiff complains about ongoing pain and is not as active as she was before the car accident in April 2011. The ALJ found such testimony was insufficient to establish any functional limitations associated with Plaintiff's injuries. (Tr. 716). *See Lashley v. Sec'y of Health & Human Servs.,* 708 F.2d 1048, 1054 (6th Cir.1983) ("[p]erceptible weight must be given to lay testimony where ... it is fully supported by the reports of the treating physicians."). The ALJ also considered Plaintiff's ability to maintain part-time employment. (Tr. 717). *See Miller v. Comm'r of Soc. Sec.,* 524 F. App'x 191, 194 (6th Cir. 2013) ("Further, the ALJ did not err by considering

16

Miller's ability to maintain part-time employment as one factor relevant to the determination of whether he was disabled.")

Contrary to Plaintiff's contentions, the ALJ properly considered the requisite factors in making his credibility determination. Cases involving claims of disability based primarily on complaints of disabling levels of pain that are not fully supported by clinical records or objective medical evidence are, by their very nature, particularly difficult. However, this Court must affirm so long as substantial evidence exists in the record as a whole to support the ALJ's decision, even if substantial evidence also can be found to support a contrary conclusion as to the credibility of a plaintiff's pain complaints. Although this Court may have taken another view of these facts and decided them more favorably, the ALJ was well within his zone of choice to decide them against Plaintiff's claim. *Felisky*, 35 F.3d at 1035. Accordingly, reviewing the record as a whole, the undersigned concludes that substantial evidence exists to affirm the ALJ's credibility finding.

### 4. Vocational Issues

Last, Plaintiff alleges that the ALJ improperly relied on the testimony of the vocational expert.  Specifically, Plaintiff contends that there were two inaudible sections in the hearing transcript which preclude meaningful review of this matter.  Plaintiff also argues that the "VE was never asked about the full time employability of a hypothetical individual limited . . . to no more than 4 hours per day of work" (Pl. Br. 10). Plaintiff's contentions lack merit.

Here, in light on the inaudible sections of the hearing transcript, Plaintiff states that the ALJ relied on the answer to a hypothetical question in which the limitations are

unclear. However, as outlined by the Commissioner, comparing the hearing testimony to the ALJ's RFC limitations, it is clear that they are nearly identically except for exertional level.  Notably, the first hypothetical question limited the individual to "light work activity" with additional limitations:

> not in a working environment that be fast paced or production paced requirements . . . no work around heights, hazards, dangerous machinery . . . no close teamwork, no more than intermittent and superficial contact with the public, no more than occasional contact with coworkers and supervisors, no operation of **(INAUDIBLE)** (emphasis added) (Tr. 90).

Similarly, the ALJ's RFC limitations were:

> sedentary work . . . except that she cannot work in an environment in which there would be fast paced or production paced requirements, she can do no work around heights, hazards or dangerous machinery, she can do no close team work, she can have no more than intermittent superficial contact with the public, she can [have] no more than occasional contact with coworkers and supervisors, and she can do no operation of **motor vehicles** (emphasis added) (Tr. 715).

In light of the foregoing, the Commissioner asserts that a reasonable person would read that the "inaudible" in the hypothetical question was "motor vehicles" (Tr. 715). This limitation would be consistent with the ALJ's RFC finding which seemingly credits Plaintiff's own statements, that she had panic attacks when she drove. (Tr. 716, *see* Tr. 75).

With respect to the second inaudible portion, the transcript reflects the following:

> "Q. All right, thank you very much. Okay. Another question and, this is Hypothetical Number 2. I would like you to consider the same individual, the same contribution, the same limitations; however, now, the hypothetical individual would be capable of ( INAUDIBLE) limitations. And let me ask you, in your opinion, would there be any jobs in the national economy for such an individual?"

(Tr. 92).

18

In response to this question, the vocational expert identified several *sedentary jobs* such an individual described in the second hypothetical and specifically used the word "sedentary" twice in his response. (*See* Tr. 92). As such, it seems evident that the VE was asked to consider an individual capable of sedentary work.  Moreover, as noted by the Commissioner, this is a reasonable reading of the hearing transcript given that the VE had already considered "light" jobs in the first hypothetical question, having also specifically identified "light" jobs in his response. (Tr. 90-91). Thus, contrary to Plaintiff's contentions, the Court's ability to review the ALJ's decision is not impaired by the inaudibles. *See Williams v. Barnhart*, 289 F.3d 556, 557–58 (8th Cir. 2002) ("Absent an indication that the missing portion of the transcript would bolster appellant's arguments or prevent judicial review, this Court will not remand a case based upon inaudible portions of the record"). The ALJ reasonably relied on the vocational expert's testimony to support his finding that Plaintiff could perform a significant number of jobs.

Last, Plaintiff argues that the VE was never asked about the full time employability of a hypothetical individual limited . . . to no more than 4 hours per day of work.  Plaintiff's contention lacks merit.

The Sixth Circuit has held that a hypothetical question must only include a claimant's credible impairments and limitations. *See Smith v. Halter,* 307 F.3d 377, 378 (6th Cir.2001) (emphasis added); *Casey v. Sec'y of Health & Human Servs.,* 987 F.2d 1230, 1235 (6th Cir.1993). Here, the ALJ's hypothetical question was supported by the medical record and other evidence, and Plaintiff has not shown that she had limitations greater than those reflected in the ALJ's hypothetical question and eventual RFC finding. However, as discussed above, the medical evidence did not support these

alleged limitations, and there is no credible medical opinion that shows that Plaintiff had greater limitations than the ALJ found.

Furthermore, as noted by the Commissioner, Plaintiff was represented by an attorney at the hearing and had an opportunity to question the VE. (Tr. 93-94). Yet, her attorney chose not to ask the VE any questions. (Tr. 93-94). S*ee McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006) ("[C]ounsel may not now complain because he failed to cross examine [the medical expert] when he had an opportunity to do so . . . ."); *Baranich v. Barnhart*, 128 F. App'x 481, 489-90 (6th Cir. 2005) (finding that ALJ committed no error when attorney voluntarily abandoned questioning of vocational expert).

Accordingly, the ALJ's decision is substantially supported in this regard.

### III.  Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT**: 1) The decision of the Commissioner to deny Plaintiff's DIB benefits be **AFFIRMED** because it is supported by substantial evidence in the record as a whole; and 2) As no further matters remain pending for the Court's review, this case be **CLOSED.**

     */s Stephanie K. Bowman*
     Stephanie K. Bowman
     United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

CYNTHIA JACKSON,                                        Case No. 1:14-cv-873

          Plaintiff,                                    Dlott, J.
                                                        Bowman, M.J.

     v.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

21